IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TINA CARTER HUGHES,            )
                               )
            Plaintiff,         )
                               )
      v.                       )       1:11CV546
                               )
RESEARCH TRIANGLE INSTITUTE,   )
                               )
            Defendant.         )

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

The instant matter comes before the undersigned United States Magistrate Judge on Defendant's Motion to Dismiss (Docket Entry 5). (See Docket Entry dated Oct. 27, 2011; see also Docket Entry dated July 12, 2011 (assigning case to undersigned Magistrate Judge).) For the reasons that follow, the instant Motion should be denied without prejudice.

**I. Background**

Plaintiff Tina Carter Hughes worked (apparently as a computer programmer or research analyst) for Defendant Research Triangle Institute ("RTI") from February 11, 2008, until her discharge on October 19, 2010. (Docket Entry 7-1 at 5.)[1] She alleges racial

---

[1] The Pro se Complaint Form on the Docket appears to lack two of three supplemental pages attached by Plaintiff to the copy she served on RTI; however, because Defendant acknowledges it received the complete Complaint, including all three supplemental pages (see Docket Entry 7 at 1 n.1), this Recommendation treats those supplemental pages as part of the Complaint. When referencing the supplemental pages, this Recommendation cites the version of the Complaint attached to Defendant's Memorandum of Law

discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964.  (Docket Entry 1 at 2; Docket Entry 7-1 at 5.)  She also references "[42 U.S.C. §] 1983 or 28 U.S.C. [§] 1343," although she indicates "[t]he acts complained of in this suit concern termination of employment and racial discrimination and company retaliation."  (Docket Entry 7-1 at 5.)

Plaintiff claims that, in December of 2008, she learned that "other Research Analysts did not want to work with [her] because [she] had the same grade" and, as a result, her superiors lowered her grade (Docket Entry 7-1 at 5), despite the fact that she had received "second to the highest raise out of more than 40 people" her first year on the job (id. at 6).  Further, Plaintiff alleges she was assigned to a project in March of 2009 for which Ms. Lillia Filippenko "was the project leader and elected to have Mai Wilkelgreen interface with [Plaintiff and] Amy Wilkerson (white)."  (Id.)  Plaintiff asserts Ms. Filippenko took this step because she "did not want to deal" with Plaintiff and Wilkerson.  (Id.)  Plaintiff claims to have told Ms. Wilkelgreen that Plaintiff "had not programmed in the language [used for the project] for seven months and that there would be a learning curve. [Plaintiff] was met with indifference and told [she] was making excuses."  (Id.)  Plaintiff allegedly was removed from the project after a week and a half.  (Id.)

---

in Support of Defendant's Motion to Dismiss.

After that incident, Plaintiff alleges she contacted "an African American retire [sic] of [Plaintiff's] former department that had worked at RTI and with Ms. Filippenko to ask if Ms. Filippenko was racist[;] she said 'Yes.' [Said retiree] also wanted to tell [Plaintiff] others in the department she felt was [sic] prejudice, but [Plaintiff] told her [she] could not handle it." (Id.)

In July of 2009, Plaintiff allegedly spoke with a member of RTI's Human Resources ("HR") department concerning her "grievances about Ms. Filippenko." (Id.) She asserts that, "[a]fter going to HR, [] management proceeded to severely limit [her] work and proceed [sic] to retaliate in the following ways: grading assignments, manufactured performance improvement plan ["PIP"], etc." (Id. at 6-7.) Plaintiff's Complaint does not detail the circumstances surrounding her discharge; it simply states that Plaintiff's dates of employment were "2/11/2008 - 10/19/2010" and that her "[e]mployment was terminated because plaintiff was discharged." (Id. at 5.)

Plaintiff seeks "recovery of back pay, reinstatement to [her] former job, trial by jury on all issues so triable, attorney fees, court costs, money damages, injunctive relief or both and money damages for emotional distress which manifested as depression, diabetes, and cancer while at RTI and immediately following termination." (Id. at 7.)

3

Defendant filed the instant Motion to Dismiss (Docket Entry 5) pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6), arguing that Plaintiff "failed to properly serve RTI with the Summons and Complaint and that her Complaint fails to allege sufficient factual matter to state a plausible claim for relief against RTI" (Docket Entry 7 at 1 (footnote omitted)). Plaintiff responded (Docket Entry 10) and RTI replied (Docket Entry 13). Plaintiff also filed a second Response (Docket Entry 14) after RTI's Reply.

## II. Discussion

### A. *Service of Process – Rule 12(b)(5)*

Litigants must serve a corporation "(A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or a any other agent authorized by appointment or by law to receive service of process . . . ." Fed. R. Civ. P. 4(h)(1). Rule 4(e)(1) provides for service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made . . . ." Fed. R. Civ. P. 4(e)(1). North Carolina law similarly requires service upon an officer, director, or managing or general agent of a corporation. See N.C. R. Civ. P. 4(j)(6).

4

In this case, Plaintiff initially served a copy of the Summons and Complaint on Anuja G. Purohit, an in-house counsel for RTI who was "neither counsel of record in this lawsuit, nor . . . counsel of record in Plaintiff's underlying administrative charge of discrimination before the [EEOC]." (Docket Entry 7 at 5-6; see also Docket Entry 10 at 1). After receipt of RTI's Motion to Dismiss, Plaintiff re-served the Summons and Complaint on John E. Pueschel, the attorney of record in this case for RTI. (Docket Entry 12 at 1; see also Docket Entry 10 at 1.)

RTI maintains that

> [t]here is no authority of which RTI is aware that allows a plaintiff to cure insufficient service of process by mailing a summons and complaint to counsel for a corporate defendant who has filed a motion to dismiss claiming the defendant was not properly served. Accordingly, Plaintiff's Complaint should be dismissed for insufficiency of service of process pursuant to Rule 12(b)(5).

(Docket Entry 13 at 4.) However, "*pro se* litigants are allowed even greater latitude [than litigants represented by counsel] to correct defects in service of process and pleadings." Miller v. Northwest Region Library Bd., 348 F. Supp. 2d 563, 567 (M.D.N.C. 2004) (Beaty, J.); see also Lisson v. ING GROEP N.V., 262 Fed. App'x 567, 571 (5th Cir. 2007); Moore v. Agency for Int'l Dev., 994 F.2d 874, 876 (D.C. Cir. 1993). The Court therefore should deny Defendant's instant Motion to the extent it requests dismissal of this action under Federal Rule of Civil Procedure 12(b)(5) and

5

instead should allow Plaintiff an opportunity to perfect service of process.

### B. Failure to State a Claim - Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a complaint falls short if it does not "contain sufficient <u>factual matter</u>, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u> In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>

"[D]etermining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion . . . requires the reviewing court to draw on its judicial experience and common sense." <u>Francis v. Giacomelli</u>, 588 F.3d 186, 193 (4th Cir. 2009). Moreover, although the Supreme Court has reiterated the importance of affording pro se litigants the benefit of liberal construction, <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007), the United States Court of Appeals for the Fourth Circuit has "not read <u>Erickson</u> to undermine <u>Twombly</u>'s requirement

6

Case 1:11-cv-00546-JAB-LPA   Document 15   Filed 09/24/12   Page 6 of 13

that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly standard in dismissing pro se complaint); accord Atherton v. District of Columbia Off. of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 679, respectively)), cert. denied, 130 S. Ct. 2064 (2010).

As an initial matter, to the extent Plaintiff alleges a violation of 42 U.S.C. § 1983 (see Docket Entry 7-1 at 5), her Complaint fails to state a claim upon which relief can be granted. "To implicate 42 U.S.C. § 1983, conduct must be 'fairly attributable to the State.'" DeBauche v. Trani, 191 F.3d 499, 506 (4th Cir. 1999) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)). Nothing in Plaintiff's Complaint alleges factual matter that would allow a reasonable factfinder to conclude that the conduct of RTI or its employees qualifies as State action.

(See Docket Entry 7-1 at 5-7.)[2] Accordingly, the Court should dismiss any claim under § 1983.

Plaintiff also alleges claims for discrimination and retaliation under Title VII. Title VII prohibits an employer from "discharg[ing] any individual, or otherwise [] discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). In the absence of factual allegations directly showing discriminatory intent,[3] a plaintiff nonetheless may state a prima facie claim of

---

[2] Plaintiff also references 28 U.S.C. § 1343 in her Complaint (see Docket Entry 7-1 at 5); however, this provision does not establish any cause of action but instead grants federal courts subject matter jurisdiction over certain civil rights cases, including § 1983 and Title VII, see 28 U.S.C. §§ 1343(a)(3) & (4).

[3] The United States Supreme Court has held that "an employment discrimination plaintiff need not plead a prima facie case of discrimination . . . ." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002); see also Equal Emp't Opportunity Comm'n v. Propak Logistics, Inc., No. 1:09cv311, 2010 WL 3081339, at *5 (W.D.N.C. Aug. 6, 2010) (unpublished) ("Twombly did not overrule [the] portion of Swierkiewicz [rejecting a prima facie case pleading requirement] but rather reaffirmed th[at] holding as it relates to cases of employment discrimination."). In reaching this conclusion, the Supreme Court noted that the so-called "prima facie case" requirement merely represents part of an indirect method of proving employment discrimination (derived from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)) and therefore declared that "it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because . . ., if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case." Swierkiewicz, 534 U.S. at 511. In the instant case, however, Plaintiff does not allege any factual matter directly showing discrimination or retaliation (either in her Complaint (Docket Entry 7-1) or her Response(s) to the Motion to Dismiss (Docket

discrimination under Title VII by alleging: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Maryland Ct. of App., 626 F.3d 187, 190 (4th Cir. 2010); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

Title VII also makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). In the absence of factual allegations directly showing retaliatory intent, a plaintiff nonetheless may show a prima facie case of retaliation by alleging: "(1) engagement in a protected activity [i.e. opposing violations of Title VII or participating in a Title VII matter]; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." Coleman, 626 F.3d at 190.

Plaintiff's Complaint sets out a fairly detailed account of some of her experiences while working for RTI; however, this account lacks factual information, even if accepted as true, to

---

Entries 10, 14)) and the undersigned therefore will focus on the elements of a prima facie case for each.

permit a reasonable fact-finder to determine that RTI subjected Plaintiff to unlawful discrimination or retaliation. First, the Complaint does not identify her race. (See Docket Entry 7-1 at 5-7.) Furthermore, the Complaint does not allege that other similarly situated employees outside of Plaintiff's protected class were treated differently. (See id.) In addition, although the Complaint does assert that Plaintiff "got the second highest raise out of more than 40 people" her first year of employment (id. at 6), it does not indicate she performed satisfactorily during the time leading up to her termination (see id. at 5-7). Finally, the Complaint offers only conclusory allegations to connect Plaintiff's complaint to RTI about discrimination and any adverse action:

(1) "After going to HR, my management proceeded to severely limit work and proceed [sic] to retaliate in the following ways: grading assignments, manufactured performance improvement plan, etc." (id. at 7); and

(2) "Plaintiff alleges Ms. Filippenko was discriminatory (7/2009) and management from that point forward retaliated and manufactured a performance improvement plan all to terminate Plaintiff's employment" (Docket Entry 1 at 2).

Nevertheless, to the extent Plaintiff's Complaint may lack sufficient factual allegations to establish a prima facie case of race-based discriminatory and/or retaliatory termination, it appears from her filings that she could amend the Complaint to

10

provide additional factual information that might suffice. Defendant argues that "Plaintiff never alleges that she was performing satisfactorily at the time of her termination, nor does she allege any facts that, even if accepted as true, would permit a reasonable inference that she was performing at a level that met RTI's legitimate expectations at the time of her termination." (Docket Entry 7 at 10.) However, in Plaintiff's Response, she does note that she "disagree [sic] with performance appriasals [sic] and PIP as [s]he feels she was performing adequately." (Docket Entry 10 at 4.) Additionally, Defendant has argued that Plaintiff "has failed to plead any disparate treatment of similarly situated comparators or any other circumstantial evidence supporting an inference of discrimination with regard to her termination." (Docket Entry 7 at 11.) Plaintiff, however, implies throughout her filings that she and Ms. Wilkerson were similarly situated and notes that "[t]hree other people were on the PIP[;] one passed, one was terminated after given two PIP consecutively and plaintiff was terminated after first PIP." (Docket Entry 10 at 4.) Finally, in both of Plaintiff's Oppositions to the instant Motion, she makes clear that she believes RTI manufactured the circumstances surrounding her termination in retaliation for her report of discrimination to HR. (See Docket Entry 10 at 3-4; Docket Entry 14 at 1.)

11

Under these circumstances, the Court should not dismiss this action, but rather should allow Plaintiff an opportunity to amend her Complaint to add factual allegations in support of her claims (particularly in light of her status as a pro se litigant). See, e.g., Threat v. Potter, No. 3:05CV116, 2006 WL 1582393, at *1 (W.D.N.C. June 2, 2006) (unpublished) ("[I]n its discretion, the Court finds that allowing the Plaintiff to amend her Complaint to correct these deficiencies is a wiser course than to order a dismissal at this early stage of the action.").

### III. Conclusion

Because Plaintiff has proceeded pro se and has lodged some serious allegations that she suffered adverse employment action because of her race and her prior discrimination complaint, the Court should refrain from dismissing this case at this point. Instead, the Court should permit Plaintiff an opportunity to perfect service and to amend her Complaint, after which time Defendant should have the right to relitigate the Rule 12(b)(6) issues, if appropriate.

12

**IT IS THEREFORE RECOMMENDED** that Defendant's Motion to Dismiss (Docket Entry 5) be denied, but without prejudice to re-filing as to the Rule 12(b)(6) issues after Plaintiff has an opportunity to amend her Complaint.

                                              /s/ L. Patrick Auld
                                                          **L. Patrick Auld**
                                         **United States Magistrate Judge**

September 24, 2012